UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Kristine Karila, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>EF Education First International, Ltd. and Go Ahead Vacations, Inc.,<br><br>　　　　　　　　　Defendants. | **Case No. 21-10643** |

CLASS ACTION COMPLAINT

INTRODUCTION

1. Plaintiff Kristine Karila and tens of thousands of others paid Defendants thousands of dollars up front to provide packaged vacation tours. Defendants operated these tours within the United States and abroad. When the pandemic forced cancellation of the tours, Defendants offered participants only partial refunds or vouchers for future travel.

2. But Massachusetts law requires tour operators to provide consumers three options in these circumstances: a full cash refund, a substitute trip of equivalent value, or a substitute trip of lesser value with a cash refund of the difference.  940 C.M.R. 15.06. And Defendants' contracts with all putative class members specify that Massachusetts applies in all respects.

3. Despite their contracts with Ms. Karila and putative class members, Defendants refused to offer consumers the three options Massachusetts law requires, and so this class action seeks declaratory, injunctive and monetary relief on behalf of all affected consumers to enforce that law.

**PARTIES**

4. Plaintiff Kristine Karila is an individual who resides in Mission Viejo, California.

5. Defendant EF Education First International, Ltd. ("EF International") is a Swiss corporation with its principal place of business in Switzerland.

6. Defendant Go Ahead Vacations, Inc. ("EF Go Ahead"), is a Massachusetts corporation, with its principal place of business at Two Education Cir., Cambridge, Massachusetts.

7. Defendants are affiliated entities in a business known as "EF Education First," which holds itself out as a "global education company focusing on language, academic, cultural exchange and educational travel programs."

8. For decades, EF Education First has marketed and sold travel services and tours through its website and from its offices in Cambridge, Massachusetts, through its affiliates and subsidiaries, including EF Go Ahead.

9. EF Education First was founded in 1965 by Bertil Hult and its current chairman is his son, Philip Hult. The EF entities share common management. Philip Hult is also manager of certain related EF entities and has an office address at One Education Street in Cambridge, Massachusetts.

10. At all pertinent times, EF Go Ahead was the actual and apparent agent of EF International.

11. Defendants are "sellers of travel services" and "tour operators" as defined by 940 C.M.R. 15.02.

12. According to the EF Go Ahead Booking Conditions, EF International operates the EF Go Ahead tours and EF Go Ahead acts as a marketing service provider for EF International.

13. Ms. Karila and the proposed Class (defined in ¶ 43) are collectively referred to as "class members" except as the context otherwise requires.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the proposed Class consists of 10,000 or more members, the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists.

15. Defendants chose this venue and the substantive law of Massachusetts in all their contracts with Ms. Karila and class members, and specified in the contractual terms they drafted that any disputes among the Parties "whether or not related to [their] agreement, the literature for the trip or the trip itself, shall be resolved solely in courts of the Commonwealth of Massachusetts and/or the United States District Court for the District of Massachusetts," and thereby consented to both jurisdiction and venue in this court.

16. In addition, Defendants have systematically and continuously transacted and conducted business in Massachusetts, and contracted to supply travel services here. Defendants expected or should have expected that their acts would have consequences within Massachusetts. Plaintiffs' claims arise from these actions.

17. Defendants derived and continue to derive substantial revenue from selling travel services from their Massachusetts locations.

18. Defendants also purposely availed themselves of the privileges of conducting business in Massachusetts.

19. This Court has personal jurisdiction over EF Go Ahead because its principal place of business is in Massachusetts, and over EF International because it has sufficient Massachusetts-based activities, including but not limited to activities conducted through its affiliates, its subsidiaries, and its website.

20. Venue is also appropriate in this district under 28 U.S.C. § 1391 because EF Go Ahead has a principal place of business in Cambridge, Massachusetts, a substantial portion of Defendants' alleged misconduct occurred here, and Defendants have sufficient contacts with this District.

**APPLICABLE LAW**

21. Defendants' contracts specify the application of Massachusetts law and require a Massachusetts forum for the resolution of all disputes. Those contracts state:

> This agreement shall be governed in all respects, and performance hereunder shall be judged, by the laws of the Commonwealth of Massachusetts. In the event of any claim, dispute or otherwise at law or in equity arises between the Released Parties, whether or not related to this agreement, the parties submit and consent to the exclusive jurisdiction and venue of the courts of the Commonwealth of

4

Massachusetts and of the United States District Court for the District of Massachusetts.

22.  The Attorney General's regulations, 940 C.M.R. 15.00, *et seq.*, govern the sale of travel services. The regulations define a "seller" of travel services as anyone who "sells, provides, contracts for, or arranges travel services" and a "tour operator" as "a seller of travel services that creates and sells travel packages, either directly to the public or indirectly to the public." 940 C.M.R. 15.02.

23.  940 C.M.R. 15.06 requires tour operators to provide three options for compensation to consumers when they fail to provide purchased services:

> 1) the seller will refund to the consumer in cash an amount equal to the fair market retail value of any undelivered, purchased travel service, such cash refund not to exceed the total amount paid by the consumer for the travel package, and such cash refund to be delivered within 30 days of the consumer's selection of this option; or
>
> (2) the seller will provide a specifically identified substitution travel service of equal or greater fair market retail value for any undelivered, purchased travel service, at no additional cost to the consumer; or
>
> (3) the seller will provide a specifically identified substitute travel service of lower fair market retail value for any undelivered, purchased travel service, and refund to the consumer in cash an amount equal to the difference in the fair market retail prices of the purchased and the substitute travel services, such cash refund to be delivered within 30 days of the consumer's selection of this option.

24.  Earlier this year this Court issued a decision in a travel services case involving circumstances that invoked the regulation's application, finding that the tour operator must offer the three mandated options and honor the consumer's choice among those three options:

> The regulation, however, makes clear that, in the event that a tour operator fails to provide a purchased travel service, the tour operator must offer passengers their choice of the three options enumerated under the regulation and that they must honor the consumers' choices within thirty days of the consumers' selection.

*Hebert v. Vantage Travel Service, Inc.*, 444 F.Supp.3d 233, 254 (D. Mass. 2020).

25.     940 C.M.R. 15.03 prohibits certain misrepresentations regarding travel services and cancellation policies, and 940 C.M.R. 15.04 prohibits the failure to timely disclose certain information regarding travel services, including applicable cancellation and refund policies.  Failure to comply with 940 C.M.R. 15.04 entitles consumers to cancel their purchase of travel services and obtain a full refund of all payments made, within 30 days of cancellation.  940 C.M.R. 15.04(4).

26.     940 C.M.R. 15.01(1) provides that "[a] violation of any provision of 940 C.M.R. 15.00 shall be an unfair or deceptive act or practice, under M.G.L. c. 93A, § 2(a)."

27.     In addition, M.G.L. c. 93, § 101 prohibits the waiver of consumer rights:

> Any rights granted to consumers under the provisions of any law or regulation enacted or promulgated by the commonwealth or any political subdivision thereof providing protection of such consumers' health, safety or welfare shall not be waived by agreement or otherwise unless specifically permitted by such law or regulation.

**THE ATTORNEY GENERAL'S ENFORCEMENT ACTION AGAINST EF INSTITUTE FOR CULTURAL EXCHANGE, INC. AND EF EXPLORE AMERICA, INC.**

28.     The Attorney General has received more than 700 consumer complaints against various EF Education First entities.

29.     On May 20, 2020, Attorney General Maura Healey accepted an Assurance of Discontinuance from EF Institute for Cultural Exchange, Inc. and EF Explore America, Inc. which required them to offer Massachusetts consumers whose tours were

scheduled to depart between March 11, 2020 and May 14, 2020 the option of a full cash refund, less $565 for international tours, $450 for domestic air tours, and $150 for domestic bus tours.

**DEFENDANTS' REFUSAL TO HONOR MS. KARILA'S ELECTION OF FULL CASH REFUNDS**

30.     On November 29, 2019, Ms. Karila reserved the EF Go Ahead April 3-18, 2020 Portugal, Spain and Morocco trip, paying a $300 deposit and executing Defendants' standard form contract. Thereafter, she made two monthly installment payments and on January 17, 2020 paid the remainder of the $3,799 total cost of the trip.

31.     Defendants never provided Ms. Karila the refund and cancellation rights disclosures required by 940 C.M.R. 15.04.

32.     Defendants never provided putative class members with the refund and cancellation rights disclosures required by 940 C.M.R. 15.04 either.

33.     Defendants cancelled the April trip because it was undersubscribed. Ms. Karila then agreed to join the same trip, scheduled for May 15-30, 2020. On March 27, 2020 EF Go Ahead emailed Ms. Karila, stating that the May trip was indefinitely "postponed" due to the COVID-19 pandemic.

34.     Defendants provided Ms. Karila with four options — none of which was a 100% refund. Instead, over the course of more than three months of email exchanges in which Ms. Karila repeatedly asked for a full refund, Defendants refused to honor her request for that full refund, insisting that they would keep her $300 deposit. Defendants even refused Ms. Karila's compromise offer — that they apply the $300 to future travel should Ms. Karila ultimately elect that route.

7

35. Defendants similarly failed to provide putative class members the three options required by section 15.06.

36. Defendants' consistent refusals left Ms. Karila with little choice, so she took the partial refund, receiving all but $300 of her trip payment.

37. By comparison, Ms. Karila booked two other European vacations for 2020 through different, non-Education First companies and received a 100% refund when they were canceled, including a full refund for an add-on concert and hotel room.

### DEFENDANTS' FAILURE TO PROVIDE A REASONABLE RESPONSE TO MS. KARILA'S CHAPTER 93A DEMAND ON BEHALF OF HERSELF AND CLASS MEMBERS

38. On January 8, 2021, Ms. Karila made a written demand for relief pursuant to Chapter 93A, § 9 upon Defendants. The demand letter sought Defendants' compliance with the provisions of 940 C.M.R. 15.06 on behalf of the class defined in the letter and below in paragraph 45. A copy of the c. 93A demand is attached as Exhibit 1.

39. Defendants responded on February 5, 2021, denied they violated Chapter 93A and explicitly refused to honor Ms. Karila's demand to:

> Offer each class member the three options required by 940 CMR 15.06, and honor each consumer's choice;
>
> For those who elect full refunds per 940 CMR 15.06(1), or partial refunds per 940 CMR 15.06(3), make such refunds within 30 days of the consumer's election; and
>
> For those class members who elect the options described in 940 CMR 15.06(2), pay $25 statutory damages per Chapter 93A, 9, within 30 days of the consumer's election.

A copy of Defendants' response to the c. 93A demand is attached as Exhibit 2.

40. In their response, Defendants referred to contract provisions that provided customers would receive a future travel voucher, less non-refundable fees, if a tour was postponed, modified or cancelled, because of government restrictions, public health issues, quarantine, or threats of public health issues. *Id.* at 2.

41. The response did not even mention the Attorney General's Regulations, 940 C.M.R. 15.00, et seq., the legal basis for Ms. Karila's demand for relief.

42. Defendants' response constitutes a refusal to comply with the express dictates of 940 C.M.R. 15.06 and its invocation of Defendants' contracts with Ms. Karila constitutes an attempt to contractually waive Ms. Karila's and class members' rights in violation of c. 93 § 101.

43. Defendants' response is unreasonable.

44. Defendants' response is made in bad faith, with knowledge or reason to know that their violation of the express requirements of 940 C.M.R. 15.06 violated Chapter 93A.

## CLASS ALLEGATIONS

45. The class is composed of all persons in the United States:

   (i) who purchased travel services from Defendants for trips to take place in 2020;

   (ii) before accepting payment for those travel services, Defendants did not provide in writing the information specified by 940 C.M.R 15.04;

   (iii) Defendants did not provide the purchased travel services in 2020; and

   (iv) to whom Defendants have not offered in writing the three options specified by 940 C.M.R 15.06.

9

46. The Class Period begins on January 1, 2020, and ends on the date when a class is certified in this case.

47. Based on the volume of Defendants' travel services, the prospective class numbers more than 10,000 people, making joinder of all members impracticable. The exact size of the proposed class and the identity of the class members are readily ascertainable from Defendants' business records.

48. There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members. The principal common issues regarding the class include: whether Defendants' violated Chapter 93A by, among other things: their failure to provide class members with the disclosures required by 940 C.M.R. 15.04; failure to provide the three options required by 940 C.M.R. 15.06; and their misrepresentation of cancellation and refund rights under 940 C.M.R. 15.03. Additional questions are whether their misconduct was willful or knowing; and whether their refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated Chapter 93A.

49. There are no difficulties likely to be encountered by the Court in the management of this proposed class action. There are no individual questions, other than those which can be determined by ministerial inspection of Defendants' records, and the issues of liability are determinable entirely from the face of the operative documents.

50. Ms. Karila's claims are typical of those of the class she seeks to represent, and she will fairly and adequately protect and represent the interests of the class. There is no conflict between Ms. Karila and the proposed class.

51. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. In addition, it is likely that most class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications regarding the individual class members against Defendants.

52. Ms. Karila is represented by counsel competent and experienced in both consumer protection and class action litigation.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF CHAPTER 93A

53. By the misconduct complained of, Defendants engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A. As a result, Ms. Karila and class members have been damaged in an amount to be determined at trial.

54. Defendants' unfair and deceptive practices include, without limitation, the violations of:

      a.      940 C.M.R. 15.06, by failing to offer and honor required consumer options, including required cash refunds, upon its failure to provide purchased travel services;

      b.      940 C.M.R. 15.03 by misrepresenting consumer cancellation rights;

      c.      940 C.M.R. 15.04 by failing to disclose consumers' actual cancellation and refund rights under Massachusetts law;

      d.      940 C.M.R. 3.05, by misrepresenting Defendants' adherence to applicable Massachusetts law, in particular, 940 C.M.R. 15.06;

      e.      940 C.M.R. 3.13 regarding Pricing and Refund, Return and Cancellation Privileges, by failing to comply with 940 C.M.R. 15.06;

      f.      940 C.M.R. 3.16, by purporting to supersede and waive 940 C.M.R. 15.06 via its contractual provisions; and

      g.      M.G.L. c. 93 § 101, by attempting to have consumers waive protections provided by Massachusetts law and relying upon expressly invalid waivers to deny relief demanded pursuant to Chapter 93A, ¶ 9.

### REQUEST FOR RELIEF

WHEREFORE, Ms. Karila, individually and on behalf of all class members, requests that the Court:

      A.      Certify the proposed class, appoint Ms. Karila as class representative and Ms. Karila's counsel as class counsel;

  B. Temporarily and permanently enjoin Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

  C. Order Defendants to disclose in writing the information specified by 940 C.M.R. 15.04, offer each class member the three options required by 940 C.M.R. 15.06, and honor each consumer's choice;

  D. For those class members who elect full or partial refunds per 940 C.M.R. 15.06(1) and (3), order Defendants to make such refunds within 30 days of the consumer's election;

  E. For those class members who elect the options described in 940 C.M.R. 15.06(2) for a substitute travel service of equal or greater value, order Defendants to provide such services within 30 days of election, and pay $25 statutory damages per Chapter 93A, 9;

  F. Double or treble the damages awarded, pursuant to Chapter 93A;

  G. Order Defendants to pay both pre-judgment and post-judgment interest on any amounts awarded;

  H. Award costs and reasonable attorneys' fees; and

  I. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Ms. Karila hereby demands a jury trial for all claims so triable.

DATED: April 16, 2021

Respectfully submitted,

/s/ John Roddy
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
**Bailey Glasser LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
T. 617.439.6730
F. 617.951.3954
jroddy@baileyglasser.com
eryan@baileyglasser.com

William McGrane (*pro hac vice* to be filed)
Michael Hassen (*pro hac vice* to be filed)
Matthew Sepuya (*pro hac vice* to be filed)
**McGrane PC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
T. 415.292.4807
F. 415.276.5762
william.mcgrane@mcgranepc.com
michael.hassen@mcgranepc.com
matthew.sepuya@mcgranepc.com

Barry M. Altman (BBO # 16710)
Brian T. Corrigan (BBO # 641750)
**Altman & Altman**
404 Main Street, Suite 3
Wilmington, MA 01887
T. 978.658.3388
F. 978.694.4061
baltman@altmanattorneys.com
corriganlaw@gmail.com

Sean T. Carnathan
**O'Connor, Carnathan and Mack LLC**
67 South Bedford Street, Suite 400W
Burlington, MA  01803
T. 781.359.9002
F. 781.359.9001
scarnathan@ocmlaw.net