## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KRISTINE KARILA on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EF EDUCATION FIRST INTERNATIONAL, LTD., AND GO AHEAD VACATIONS, INC., <br><br> Defendants. | Case No. 21-cv-10643-DJC |

## <u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                          **March 3, 2022**

### I.    Introduction

Plaintiff Kristine Karila ("Karila"), on behalf of herself and a purported class of similarly situated individuals (collectively, "Plaintiffs"), has filed this lawsuit against Defendants EF Education First International, Ltd. ("EF International") and Go Ahead Vacations, Inc. ("Go Ahead") (collectively, "Defendants"), alleging violations of Mass. Gen. L. c. 93A.   D. 1. Defendants have moved to dismiss.   D. 17.   For the reasons stated below, the Court DENIES the motion in part and ALLOWS it in part.

### II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

for relief." <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. <u>Id.</u> Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. <u>Id.</u> Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." <u>García-Catalán</u>, 734 F.3d at 103 (citation omitted).

### III.    Factual Background

The following summary is based upon the allegations in the complaint, D. 1, and are accepted as true for the purposes of resolving the motion to dismiss, D. 17. EF International is a Swiss corporation that operates tours in the United States and abroad. D. 1 ¶¶ 1, 5. Go Ahead is a U.S. company that markets and sells EF International tours. <u>Id.</u> ¶¶ 6, 11–12. Defendants are affiliated entities in EF Education First, a global education company based in the U.S. that provides language, academic, cultural exchange and educational travel programs. <u>Id.</u> ¶ 7.

On November 29, 2019, Karila paid Defendants a $300 deposit (the "Deposit") to reserve a tour of Portugal, Spain and Morocco, which was scheduled for April 3–18, 2020 (the "April Trip"). <u>Id.</u> ¶ 30. After making two additional installment payments, Karila paid the remaining balance of the $3,799 total cost of the trip on January 17, 2020. <u>Id.</u> Subsequently, Defendants canceled the April Trip because it was undersubscribed. <u>Id.</u> ¶ 33. Karila opted to join a trip with the same itinerary as the April Trip which was scheduled to depart on May 15, 2020 (the "May

Trip"). <u>Id.</u> On March 27, 2020, Go Ahead postponed the May Trip indefinitely due to the COVID-19 pandemic. <u>Id.</u> Defendants provided Karila four options but did not offer the choice of a full refund. <u>Id.</u> ¶ 34. In an exchange of emails between Defendants and Karila, Defendants refused to give Karila a full refund and instead offered a refund less the $300 Deposit. <u>Id.</u> Defendants also declined to provide Karila a partial refund with the option to apply the Deposit to the cost of future travel. <u>Id.</u> Ultimately, Karila accepted a refund less her Deposit. <u>Id.</u> ¶ 36.

In a letter to Defendants dated January 8, 2021, Karila sought relief pursuant to Mass. Gen. L. c. 93A on behalf of herself and purported class members (the "Demand Letter"). <u>Id.</u> ¶ 38; D. 1-1. Karila demanded that Defendants: (1) offer each purported class member the three options required by 940 C.M.R § 15.06, including the options of a full or partial refund; (2) provide all requested refunds within thirty days from when the client elects to receive a refund; and (3) within thirty days of election, pay $25.00 in Chapter 93A statutory damages to each purported class member who elects to receive a substitute travel service valued at or below the cost of the canceled trip. D. 1 ¶ 39; D. 1-1 at 6–7. Defendants responded to the Demand Letter on February 5, 2021, stating that they would not adhere to Karila's demands. <u>Id.</u> ¶ 39; D. 1-2. Defendants argued that the terms of the travel contract provided that when a tour is postponed, modified or cancelled due to public health concerns, quarantine or restrictions imposed by the government, customers are entitled to a voucher for future travel, less non-refundable fees. <u>Id.</u> ¶ 40; D. 1-2.

## IV.   Procedural History

Karila instituted this action on April 16, 2021. D. 1. Defendants have now moved to dismiss the complaint. D. 17. The Court heard the parties on the pending motion and took the matter under advisement. D. 31.

V.      **Discussion**

A.      <u>**Chapter 93A**</u>

 "Chapter 93A . . . is a broad consumer protection statute that provides a private cause of action for a consumer who 'has been injured,' . . . by 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" <u>Shaulis v. Nordstrom, Inc.</u>, 865 F.3d 1, 6 (1st Cir. 2017) (quoting Mass. Gen. L. c. 93A §§ 9(1), 2(a)) (internal citations omitted).  Although Chapter 93A "does not define what acts and practices are unfair or deceptive, § 2(c) of [Chapter] 93A specifically authorizes the Attorney General to promulgate regulations making these determinations." <u>Casavant v. Norwegian Cruise Line, Ltd.</u>, 76 Mass. App. Ct. 73, 76 (2009) (citing <u>Purity Supreme, Inc. v. Attorney Gen.</u>, 380 Mass. 762, 775 (1980)), <u>aff'd</u>, 460 Mass. 500 (2011); <u>see</u> <u>McDermott v. Marcus, Errico, Emmer & Brooks, P.C.</u>, 775 F.3d 109, 116 (1st Cir. 2014).

1.      *940 C.M.R § 15.06*

Karila claims that Defendants violated Chapter 93A by failing to comply with 940 C.M.R. § 15.06 when it cancelled the May Trip and did not offer a full refund.  D. 1 ¶¶ 53–54.  § 15.06 requires that where "a seller of travel services is acting as a tour operator, and the seller fails to provide any of the travel services that a consumer has purchased directly or indirectly," the seller must offer the consumer their choice of (1) "cash [in] an amount equal to the fair market retail value of any undelivered, purchased travel service," (2) "specifically identified substitution travel service of equal or greater fair market retail value for any undelivered, purchased travel service" or (3) "specifically identified substitute travel service of lower fair market retail value for any undelivered, purchased travel service, and refund to the consumer in cash an amount equal to the difference in the fair market retail prices of the purchased and the substitute travel services."  940

C.M.R. § 15.06.  A violation of § 15.06 is "an unfair or deceptive act or practice."  940 C.M.R. § 15.01(1).

Defendants argue that to satisfy the first element of a Chapter 93A claim, however, Karila must allege more than a violation of § 15.06.  D. 18 at 18–22.  The Court disagrees.  The SJC has held that "the [A]ttorney [G]eneral may make rules and regulations interpreting the provisions of [Chapter 93A]" and that 940 C.M.R. § 15.00, "defines and outlaws certain unfair or deceptive business practices in the sale of travel services to the public."  Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503–04 (2011) (internal citations omitted).  Where, as here, a regulation establishes per se unfair or deceptive acts or practices, a plaintiff need not make an additional showing of unfairness or deceptiveness aside from evidence of the violation itself.  See Cranmore v. Wells Fargo Bank, N.A., 410 F. Supp. 3d 336, 341–42 (D. Mass. 2019) (rejecting defendants' argument that a Chapter 93A claim requires more than an allegation that conduct violated 209 C.M.R. § 18.22(1) because a violation of the regulation "is per se 'an unfair or deceptive act or practice' under Chapter 93A").   Thus, when regulations define such unfair or deceptive acts or practices, evidence showing "violations [of the Attorney General's Regulations] qualify as unfair or deceptive acts" as a matter of law.  Casavant, 460 Mass. at 504 (reversing trial judge's holding that no Chapter 93A violation occurred when evidence at trial showed regulatory violation and remanding for determination of damages); see Hebert v. Vantage Travel Service, Inc., No. 17-cv-10922-DJC, 2021 WL 2516076, at *3 (D. Mass. June 18, 2021) (discussing and distinguishing Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 174 (2013) from McDermott, 775 F.3d at 120-22 and concluding that although both cases barred "per se Chapter 93 liability," neither addressed "whether regulations could define acts or practices as per se unfair or deceptive").

Even where violating a regulation is a *per se* unfair or deceptive, however, a plaintiff must still satisfy the other elements of the Chapter 93A claim.  See Barron v. NCMIC Ins. Co., No. 17-cv-11969-ADB, 2018 WL 2089357, at *5 (D. Mass. May 4, 2018) (explaining that "[v]iolations of state regulations that constitute *per se* unfair or deceptive practices under Chapter 93A do not, without more, establish injury under Chapter 93A" (citing Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 798–99 (2006))); see also Ferreira v. Sterling Jewelers, Inc., 130 F. Supp. 3d 471, 478 (D. Mass. 2015) (noting that a plaintiff must prove regulatory violation plus injury caused by the unfair or deceptive act); Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) (concluding that "violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself").  Here, Karila alleges that Defendants violated § 15.06 and that as a result, she was "damaged in an amount to be determined at trial."  D. 1 ¶ 53.  "At this stage, this is enough to state a claim under Chapter 93A."  Godines v. EF Explore America, Inc., No. 2184CV1327, 2021 WL 7083079, at *9 (Mass. Super. Ct. Dec. 20, 2021) (denying motion to dismiss where the plaintiff "allege[d] that the regulation was violated and, as a result, she ha[d] 'lost money'" (internal citation omitted)).

The crux of the issue, therefore, is whether Karila alleged sufficiently that Defendants violated 940 C.M.R. § 15.06.  Defendants argue that Karila cannot state a claim under § 15.06 because the May Trip was cancelled due to the COVID-19 pandemic, not a "failure" by Defendants.  D. 18 at 14–16.  Essentially, Defendants would have the Court apply a narrow definition of the term "fail" that means "[f]ault, negligence, or refusal."  Id. at 14 (quoting Black's Law Dictionary 594 (6th ed. 1990)).  As the court observed in Godines, a similar state court action brought against EF Explore America, Inc., "the term 'fail' can simply mean 'did not,' although it

can also convey an element of fault." Godines, 2021 WL 7083079 at *10.  The term's plain meaning, therefore, provides little guidance as to its intended usage within the travel services regulations.  Nevertheless, "Title 940 repeatedly uses the term 'fail' to mean did not,' without incorporating an element of fault, confirming that 'fail' used in Section 15.06 does not incorporate an element of fault." Id. at *10.

Further, the SJC is "'generous in [its] deference to administrative agencies in their interpretation of their own regulations,' ensuring only that their interpretation is reasonable." Mass. Fine Wines & Spirits, LLC v. Alcoholic Beverages Control Comm'n, 482 Mass. 683, 687 (2019) (quoting Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 527 (2019)).  The Attorney General has interpreted 940 C.M.R. § 15.06 to apply to undelivered travel services in the context of the COVID-19 pandemic.  See D. 25-2.  On June 18, 2020, the Attorney General filed a complaint in Suffolk Superior Court against travel company BookIt Operating, LLC ("BookIt") after the company canceled consumers' travel plans due to the COVID-19 pandemic.  Id. ¶¶ 64–65.  Similar to what Karila claims, the Attorney General alleged that BookIt violated 940 C.M.R § 15.06 by "failing" to offer the affected consumers the three options enumerated under the regulation despite the existence of COVID-19 travel restrictions.  Id. ¶ 65.  Here, Defendants' citation to an Attorney General report from 1996, D. 18 at 15 & n.6; D. 19-5, is unavailing on this point.  The report's reference to "some failure on the part of the seller of travel services," D. 18 at 15; D. 19-5 at 4, appears "intended to distinguish between a tour cancellation driven by the consumer's choice from one resulting, for whatever reason, by the failure of the tour operator to deliver the trip," Godines, 2021 WL 7083079 at *11, and its general

language does not controvert the Attorney General's more specific—and more recent—application, see D. 25-2.

Accordingly, Karila has asserted a plausible claim under Chapter 93A on the basis that Defendants violated 940 C.M.R. § 15.06.

> 2.    *940 C.M.R § 15.04*

Karila further alleges Chapter 93A liability on the basis that Defendants violated 940 C.M.R § 15.04 by failing to disclose her refund and cancellation rights under § 15.06.  D. 1 ¶¶ 30–31; D. 1-1 at 6.  Karila, however, misinterprets the plain language of § 15.04, which provides, in relevant part, that sellers of travel services must disclose to consumers "the complete terms of any cancellation or refund policy of any seller of travel services that may apply to the consumer's purchase of travel services."  940 C.M.R § 15.04(2)(e).  To allege, as Karila does, that § 15.04 requires disclosure of the cancellation and refund options under § 15.06, see, e.g., D. 25 at 14, ignores the plain meaning of the regulation.  Indeed, nothing in § 15.04 states or implies that the requirement to provide "the cancellation or refund policy of any seller of travel services" also requires disclosure of the provisions under 940 C.M.R § 15.06.  Although there is little case law applying § 15.04, the courts that have addressed the regulation, refer to the requirement to furnish the refund policy of the travel provider, not a requirement to disclose any rights provided under § 15.06.  See Casavant, 76 Mass. App. Ct. at 77 (discussing § 15.04 and stating that, as to Defendant Norwegian Cruise Line, Ltd., "[t]he proper inquiry is whether Norwegian violated the Attorney General's regulations, which required Norwegian to furnish its refund policy to the [plaintiff] prior to accepting payment"); see also Casavant, 460 Mass. at 504 (noting that "[i]t was established at trial that Norwegian had not disclosed its complete refund policy to customers in violation of [§ 15.04]"); Cooper v. Charter Commc'ns Ents. I, LLC, 760 F.3d 103, 111–12 (1st

Cir. 2014) (referencing <u>Casavant</u>, 460 Mass. at 504 and stating that "[940 C.M.R. § 15.00, *et seq.*] further provided that, should a seller fail to disclose its refund policy to a customer who had purchased services, the customer could cancel his or her contract and receive a full refund"). That is, § 15.04 requires disclosure of a company's refund policy, but does not require the company to disclose refund provisions under the General Laws, § 15.06. as Karila argues. D. 1 ¶¶ 30–31; D. 1-1 at 6. Accordingly, the Court concludes that Karila has not asserted a plausible claim for Chapter 93A liability on the basis that Defendants violated 940 C.M.R. § 15.04.

For all these reasons, the Court denies the Defendants' motion to dismiss as to Karila's § 15.06 claim and allows the motion as to the § 15.04 claim.

### B.    The Airline Deregulation Act

Defendants also argue Karila's Chapter 93A claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, *et seq.* (the "Deregulation Act"). D. 18 at 22–24. The Deregulation Act provides that no state or political subdivision thereof may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1). The Deregulation Act was enacted "to ensure that the States would not undo federal deregulation with regulation of their own." <u>Morales v. TWA</u>, 504 U.S. 374, 378 (1992). Under the Deregulation Act, an "air carrier" is defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2).

Defendants claim that they are "indirect air carriers" for purposes of the Deregulation Act because they are "tour operators." D. 18 at 22. As to EF International, Karila argues that the company is not an air carrier pursuant to 49 U.S.C. § 40102(a)(2), because it is not a "citizen of the United States," but rather, is a Swiss citizen. D. 25 at 25. A foreign air carrier, however, may

9

be entitled to preemption if it is "a person, not a citizen of the United States, undertaking by any means, directly or indirectly, to provide foreign air transportation."  49 U.S.C. § 40102(a)(21). "Foreign air transportation" is the "transportation of passengers or property . . . between a place in the United States and a place outside the United States when any part of the transportation is by aircraft."  49 U.S.C. § 40102(a)(23).  Defendants argue that "EF International qualifies as an air carrier because flights for the tours that it operates overseas originate here in the United States," D. 30 at 13, citing to Defendants' terms and conditions ("Booking Conditions"), D. 19-1.  These Booking Conditions, however, "govern[ ] tour programs . . . operated outside the United States by EF International," D. 19 ¶ 6; that is, it operates tours abroad and EF International does not reflect the definition of "foreign air transportation."  Moreover, this Court previously concluded in a related case that "EF International does not qualify as a 'foreign air carrier.'"  Douglas v. EF Educ. First Int'l, Ltd., No. 20-cv-11740-DJC, 2021 WL 4311822, at *3 (D. Mass. September 22, 2021) (explaining "EF International solely operates tours abroad").   Accordingly, EF International does not qualify as a "foreign air carrier" under 49 U.S.C. § 40102(a)(21).

As to Go Ahead, Defendants argue that Karila's claims are preempted under the Deregulation Act because Go Ahead is an indirect air carrier, and that to allege otherwise would contradict Karila's underlying claims.  D. 18 at 22–23; D. 30 at 12–14.  Karila argues that Go Ahead is not protected by the Deregulation Act because it only provides marketing and sales services, and "[a]ir carriers must provide 'air transportation.'"  D. 25 at 27.  Karila further claims that Defendants fail to show that Go Ahead is an indirect air carrier.  Id.  Unlike EF International, Go Ahead is a United States citizen.  D. 1 ¶ 6.  Go Ahead markets travel services on behalf of EF International.  Id. ¶ 12; see ABC Charters, Inc. v. Bronson, 591 F. Supp. 2d 1272, 1299 (S.D. Fl. 2008) (stating that "[t]ravel agents, tour operations, shipping and charterers and the like are

'indirect air carriers' covered by the [Deregulation Act]" (internal citations omitted)).  Because Go Ahead markets and sells travel services, booking air transportation as part of its tour packages, it qualifies under the Deregulation Act's definition of indirect air carriers.  See Hebert v. Vantage Travel Serv., Inc., 444 F. Supp. 3d 233, 249 (D. Mass. 2020) (concluding defendant, "as a tour operator that booked air transportation as part of its tour packages" qualified as an indirect air carrier under the Deregulation Act); Arkin v. Trans Int'l Airlines, Inc., 568 F. Supp. 11, 13 (E.D.N.Y. 1982) (noting that under the Federal Aviation Act, 49 U.S.C. § 1374, "travel agents, tour operators, and nominal 'social clubs' which in fact publicly sell tours and air transportation are 'indirect air carriers'" (internal citations omitted)).

Turning to whether the claims brought pursuant to Chapter 93A "relate[ ] to a price, route, or service of an air carrier," 49 U.S.C. § 41713(b)(1), the Court notes that the Supreme Court has held that the provision should be construed broadly, Morales, 504 U.S. at 384–85 (internal citations omitted); see Am. Airlines v. Wolens, 513 U.S. 219, 226–28 (1995) (concluding that claims brought under Illinois's Consumer Fraud Act challenging an airline's "charges in the form of mileage credits for free tickets and upgrades" and "access to flights and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates" were sufficiently related to the rates and services of the airline to be preempted by the Deregulation Act); see also McLaughlin v. TWA Getaway Vacations, 979 F. Supp. 174, 175 (S.D.N.Y. 1997) (analyzing preemption pursuant to the Deregulation Act and stating that "[t]he Supreme Court has broadly interpreted the provisions of the [Deregulation Act] to preempt all actions that are (a) asserted against air carriers and (b) have a connection with or reference to airline rates, routes, or services" (internal citations and quotation marks omitted)).  "[U]nder Morales, the [Deregulation Act] preempts both laws that explicitly refer to an airline's prices and those that have a significant effect

upon prices." <u>Buck v. Am. Airlines, Inc.</u>, 476 F.3d 29, 34–35 (1st Cir. 2007) (citing <u>United Parcel Serv., Inc. v. Flores–Galarza</u>, 318 F.3d 323, 335 (1st Cir. 2003)).   A state law claim may be preempted if it involves the enactment or enforcement of a state law that "has a connection with or relation to airline prices, routes or services even indirectly." <u>ABC Charters, Inc.</u>, 591 F. Supp. 2d at 1299 (citing <u>Morales</u>, 504 U.S. at 388-89).  "A sufficient nexus exists if the law expressly references the air carrier's prices, routes or services, or has a 'forbidden significant effect' upon the same." <u>United Parcel Serv., Inc.</u>, 318 F.3d at 335 (quoting <u>Morales</u>, 504 U.S. at 388).

Defendants argue that "[Karila]'s claims relate to a price, route or service of an (albeit indirect) air carrier: namely, Defendants' prices." D. 18 at 23 (internal quotation marks omitted). Defendants further contend that "[c]laims seeking air travel refunds relate to prices." <u>Id.</u> (citing <u>Buck</u>, 476 F.3d at 36).  Defendants assert that "canceled ticket refunds relate to rates" and "when a claim affects a tour operator's prices, it is preempted under the [Deregulation Act]." <u>Id.</u> (internal citations omitted).  Thus, Defendants opine that "because [Karila's] Chapter 93A claim relies on regulations that all affect Defendants' prices, it is preempted by the [Deregulation Act]." <u>Id.</u> at 23–24.  Preemption requires, however, that the regulation has a "direct connection to air carrier prices." <u>DiFiore v. Am. Airlines, Inc.</u>, 646 F.3d 81, 87-88 (1st Cir. 2011).  § 15.06 does not expressly reference air carrier prices, routes or services, referring to the value of purchased "travel service[s]" more broadly.  940 C.M.R. § 15.06; <u>see, e.g.</u>, <u>Chapman v. Priceline Grp., Inc.</u>, No. 3:15-cv-1519-RNC, 2017 WL 4366716, at *2 (D. Conn. Sept. 30, 2017) (noting that while "[b]roadly speaking, plaintiff's state law claims do involve prices at which [airline] tickets are sold . . . this does not, by itself, support [Deregulation Act] preemption" as defendants "must show that enforcing the state laws on which plaintiff relies would have a significant effect on the 'price, route or service of an air carrier'" (citing 49 U.S.C. § 41713(b)(1))).

In <u>DiFiore</u>, the First Circuit concluded that the state tips law at issue "directly regulate[d] how an airline service is performed and how its price is displayed to customers," and therefore had "a direct connection to air carrier prices and services and [could] fairly be said to regulate both." <u>DiFiore</u>, 646 F.3d at 87–88. The court emphasized that the law did "more than simply regulate the employment relationship between the skycaps and the airline," and had "the same potential impact on [the airline]'s practices as a guideline condemning the same conduct explicitly." <u>Id.</u> The airline would need to consider such modifications as "[m]odifying the [defendants'] website to mention tips," "[p]ermitting credit-card payments," "[i]nstalling a cash register at the curbside" and "[r]e-bundling the cost of curbside check-in into ticket prices," to comply with the state law. <u>Id.</u> at 88. The court concluded that such suggestions "could easily affect price and not just the provision of the [airline's] service." <u>Id.</u> at 89. Similarly, in <u>United Parcel Serv., Inc.</u>, the First Circuit concluded that the challenged scheme had a "forbidden significant effect" on UPS's prices, routes or services where it prohibited delivery unless a recipient produced a certificate, which "significantly affect[ed] the timeliness and effectiveness of UPS's service" and "create[d] a substantial burden on UPS, in the form of additional labor, costs, and delays." <u>United Parcel Serv., Inc.</u>, 318 F.3d at 335–36. The court emphasized that the burden "directly and significantly affect[ed] UPS's routes and services, which depend upon an orderly flow of packages." <u>Id.</u> (citation omitted).

Here, Karila's claim, which pertains to Defendants' failure to offer Karila the required refund options when the May Trip was cancelled, unlike <u>DiFiore</u> or <u>United Parcel Serv., Inc.</u>, has no clear tie or relation to the price, route or service of an air carrier, nor does it have an apparent impact thereon. Defendants have failed to allege any comparable or otherwise significant impact on its prices, routes or services stemming from the enforcement of 940 C.M.R. § 15.06. It is

unclear how providing the refund options required by 940 C.M.R. § 15.06 would alter Defendants'
prices, routes or services, particularly where refunds are already provided in some form by the
companies.  See D. 18 at 7.

The cases cited by Defendants do not compel a different outcome.  In Buck, plaintiffs
purchased nonrefundable, unused airline tickets from American Airlines and sought to recover
various fees and taxes that had been collected as part of the original ticket price.  Buck, 476 F.3d
at 35.  In ABC Charters, Inc., the offending state law subjected companies providing lawful travel
related services to Cuba, among other things, "extraordinary expensive registration and bonding
requirements[ ] [and] exorbitant fines."  ABC Charters, Inc., 591 F. Supp. 2d at 1281.  The court
in ABC Charters, Inc. concluded that the law "'related to' (and [would] certainly affect) the routes,
prices or services Plaintiffs provide" as "[f]ewer services at a higher rate [would] be the inevitable
(and intended) result of the [law] as the number of travel agencies shrink, because they cannot
afford to post a $100,00.00 to $250,000.00 bond, or as their increased costs are passed on to their
customers."  Id. at 1301.  Both cases involve provisions that clearly "relate to" the price or service
provided by a direct or indirect air carrier and neither involves a claim, as in the present case,
unrelated to price, route or service, nonetheless being preempted by the courts because air
transportation was an element of the travel package at issue.  The plaintiffs in ABC Charters, Inc.
were travel agents, who sold airline tickets, and aircraft charterers.  591 F. Supp. 2d 1272.  They
filed suit due to the state law's direct effect on air transportation prices.  Id.  The plaintiffs in Buck
filed suit seeking "refunds of government fees associated with air travel."  Buck, 476 F.3d at 36.
These cases are dissimilar from the present matter in which Karila purchased a tour package and
filed a lawsuit to obtain a refund or an acceptable alternative under 940 C.M.R. § 15.06 when the
Defendants canceled the tours.  See D. 1 ¶¶ 53–54; see also DiFiore, 646 F.3d at 88 (noting that

14

"federal preemption does not reach state laws that have only 'tenuous, remote, or peripheral' impact" on air carrier prices, routes or services (quoting <u>Rowe v. New Hampshire Motor Transport Ass'n</u>, 552 U.S. 364, 371 (2008))).  Accordingly, the Court concludes that the Deregulation Act does not preempt Karila's Chapter 93A claim as it relates to the requirements under 940 C.M.R. § 15.06.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES Defendants' motion to dismiss.  D. 17.  The Court ALLOWS Defendants' motion as to the alleged violation of c. 93A based upon § 15.04.  The Court DENIES Defendants' motion as to all other grounds for the c. 93A claim.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge